UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and | ) | |
| MICHAEL JANSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 22-cv-05101 |
| | ) | Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) | Heather McShain, Magistrate Judge |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

————

Defendant SHANE LIDDELL, by his undersigned counsel, respectfully submits the following Brief in support of his Motion to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2).

*Facts*

The Amended Complaint says Michael Jansen was the first graduate of St. Viator High School in Arlington Heights to attend an Ivy League school, that he "excelled" at Yale, and was then admitted to Cambridge University's Master's program in Architecture. [Amended Complaint, Docket # 8, par. 13] He was "one of the first professional American architects to see the opportunities emerging in east Asia and moved to China where he led the first Sino-American joint venture US architecture practice in Beijing, at the age of 23." [*Id.*, par 14] Then he was awarded a Fulbright Scholarship, to research Architecture in India. [*Id.*, par. 15.] He "quickly rose up the ladder at two major United States architecture practices [unnamed]." [*Id.*, par. 16.] He raised $13M for his first company, "a computer design outsourcing company called Satellier, based in India with clients around the world." Now, he's fighting Climate Change,

- 1 -

with his new company, Cityzenith.  His "work is very important to the world and for the health of the planet."  [*Id*., par. 18.]  Cityzenith has raised over $15M through crowdfunding in the US and the UK.  [*Id*., par. 11.]

Plaintiffs allege that Liddell "littered the Internet with false and defamatory information about Jansen and Cityzenith that falsely accused Plaintiffs of lacking ability or integrity in the performance of job duties and otherwise prejudiced them in their business and profession."  [*Id*., par. 21]  The gist of those "defamatory" statements was that Jansen is not exactly who he says he is, and that he's primarily in the business of getting money from investors.  The basis pled for federal subject matter jurisdiction is diversity of citizenship.   The sole basis pled for personal jurisdiction over Liddell in the Northern District of Illinois is:

> There is personal jurisdiction and venue here because the damages were suffered here. Jansen's permanent residence is in Cook County. Cityzenith's principal place of business is located in Chicago, Illinois. The lost reputation, humiliation emotional distress and other damages Plaintiffs are suffering due to the defamation per se and/or false light invasion of privacy are occurring here. Defendants knew and intended to harm Plaintiffs where their reputations are centered: Cook County, Illinois.

[Docket # 8, par. 7]

This is not the time to dispute the allegations of the pleading, but the Court can take judicial notice of public records.  According to the public record, Cityzenith was formed in Delaware in 2009, but not registered to do business in Illinois until 2017. https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.

https://apps.ilsos.gov/corporatellc/CorporateLlcController.  (Delaware search result is Exhibit B; Illinois search result is Exhibit A).  Cityzenith's current status in Illinois is "Revoked."  [Exhibit A]  The address listed as Cityzenith's corporate office with the Illinois Secretary of State, billed as its "Headquarter" (*sic*) on its website, 2506 Clark Street, Chicago, is a UPS Store.

https://cityzenith.com/contact.  [See Exhibit C]  Jansen is apparently not listed as a licensed Architect in Illinois with the Illinois Department of Financial and Professional Services. https://online-dfpr.micropact.com/lookup/licenselookup.aspx. [Search result is Exhibit D].  And no Michael Jansen appears in the official directory of Fulbright Scholars. https://fulbrightscholars.org/fulbright-scholar-directory.  [See Exhibit E]  Two conclusions emerge:  (1) Jansen and Cityzenith are, indeed, not quite what they claim to be, and (2) There would seem to be no actual business in Illinois to have its reputation damaged.

The complaint is dead wrong about at least two things:  Liddell is not Australian, and he does not live in Florida.  [Exhibit F, Liddell Declaration, par. 4]  Liddell is British, a dual citizen of the United Kingdom and South Africa, and while he did live in Florida for a while, he had returned to the UK well before any of the events giving rise to this lawsuit.  Liddell is married to an American, but the marriage took place in Britain, and he has never been a permanent legal resident of the US, or applied for American citizenship.  [Exhibit F, pars. 6-8]  Except for once changing planes at O'Hare, he has never been physically present in Illinois.  [*Id.*, Par. 12]  He has never owned any property in Illinois, and never done any business in Illinois.  [*Id.*, Par. 13]

Liddell is a crowdfunding consultant.  While he resided in South Florida (on a K-3 visa as the spouse of a U.S. citizen), Liddell formed a business, Smart Crowdfunding, LLC, a Florida limited liability company.  [Exhibit F, Par. 16]  Smart Crowdfunding only employed Liddell and his wife, and operated out of their rented Florida home.  [*Id.*, Par. 10]  It had a Florida phone number and a website.  Smart Crowdfunding never had offices or employees in Illinois, and never did business with any Illinois residents.  [*Id.*, Par. 13]  When Liddell and his wife moved back to the U.K. on September 15, 2021, they ceased to maintain any U.S. residence, and Liddell

has never returned to the U.S. [*Id*., par. 14] Liddell started a new company in the U.K., but kept the Smart Crowdfunding website and Florida telephone number. [*Id*., par 15]

The Smart Crowdfunding website has a portal through which anyone can send a message to Liddell. On August 24, 2022, eleven months after he left the U.S., Liddell was minding his own business in England when he received such a message from Jansen. Jansen's message was: "We are looking for partners for potential Regulation D capital raise. Excessively [*sic*] raise more than $7 million via crowdfunding already." [par. 18 of Exhibit F, and Exhibit 1 thereto] Jansen provided his cellphone number and email address. Liddell sent Jansen an "e-vite" through the Calendly platform, to a telephone conference on August 26, 2022 at 9:00. In view of the time difference, Liddell said he would call Jansen. Jansen agreed. At the appointed time, Liddell called Jansen. The call went straight to voicemail. So he called again. Again, the call went straight to voicemail. [*Id*., par. 18] Liddell emailed Jansen, to let him know he could not reach him. Bizarrely, Jansen responded angrily, accusing Liddell of lying. Liddell sent Jansen a screenshot showing the calls. Jansen refused to believe him, and sent several hostile emails. Liddell emailed Jansen just saying "Respectfully, I'll pass. Wishing you the best." [*Id*., par. 19-20]

Liddell switched to direct messaging Jansen on the LinkedIn platform just to confirm he was not interested: "Not sure what's with the condescending emails. As I said, I'll pass. Best of luck." [Exhibit 2 to Exhibit F, page 1] This message elicited a torrent of abuse which doesn't sound like it comes from an 'eminent architect' who is a graduate of Yale and Cambridge: "You're a fraud, no one's ever heard of you. Don't you ever talk to me like you're a real businessman you little prick…. You should be afraid of me you bitch, I would slap your ass to the ground. Fuck off and remember you're a small person who hustles investors. That's all you

are…. My guess is that you are a complete failure and I'm [*sic*] struggling with your business. I know me [*sic*] your age[1] very well." [Exhibit 2 to Exhibit F, page 2] And it went on: "I know men your age vey well. When they get that angry at a certain point, their lives are over. Just like yours…. you are a useless piece of shit. Now I remember.[2] Everybody said you were a dick back then." *Id*. At this point, Liddell became concerned. Jansen did not seem to be the kind of person anyone would want to invest with, and Liddell was worried he would use Liddell's name to solicit funds. He then began making the public posts on LinkedIn that Jansen now complains of, for the most part showing factual information gleaned from the Securities and Exchange Commission's EDGAR platform. [Exhibit F, par. 22]

Jansen continued the harassment and threats: "We reported you for lying about Cityzenith. The post will be taken down.[3] Additionally, we will issue a cease-and-desist and sue you, and that will be made public. You are obviously a complete fuck up. 100% you are broke. As I said, I know you're [*sic*] type very well. Old and still in the game, angry at the world." [Exhibit 2 to Exhibit F, page 4] "You are fucked. You were dumb enough to put this in the public room. You little prick, we're gonna play with your rectum you dumb ass. Go buy some jelly. I can't believe you were dumb enough to go public, you are a desperate limp wristed loser. I will satisfy [*sic*] beating you up one on one… So here's what's going to happen, you're going to get sued and dragged into court over here…. We're going to sue you for everything you do in every single comment. Every comment is an additional claim. Go ahead, keep putting them up." [Exhibit 2 to Exhibit F, page 5] "So you understand the sequence going forward, we will issue a cease-and-desist and a defamation notice. We will then file a case that you will have to hire an

---

[1] According to published sources Jansen was born in 1969. That makes him all of five years younger than Liddell, more or less.

[2] They had never met, and Jansen just finished saying "no one" ever heard of Liddell.

[3] It wasn't.

attorney to defend you.  That will cost you $5000.  The first thing your attorney will tell you to do is to take down all of the muck that you put up and try to negotiate a settlement with us.[4] [Exhibit 2 to Exhibit F, page 7]

And there was more—"We will demand $250,000 is [*sic*] punitive because you made your intention clear that you wanted to smear us." [Exhibit 2 to Exhibit F, page 7]  "I'm just getting started you little prick…. I am gonna fuck you for the rest of your career you little piece of shit.  Buy some jelly.  I know you're fucking terrified, but you brought this on yourself.  As I said, this will cost you tons of money.  Stupid dumbass, why the fuck did you put this public?  Now I have to beat you like a little bitch in front of your network for the rest of your career…."  "Now I'm going to break your fucking spine."  [Exhibit 2 to Exhibit F, page 9] "Our lawyers are gonna fuck you for the rest of your life every single day long after you pay me."***"The damage to your reputation you will not recover from."***"The legal strategy that we adopt we designed to do one thing and one thing only, bankrupt you and ruin your reputation."…[*Id*., Page 10] "You're old and worn out and irrelevant…You're fucked up…You are going to end up in a different line of work…. You're just a confused loser, completely fucking deluded."…  "You're a wounded seal trying to pretend like it's a shark."  [*Id*., page 12]  "I will take all your wacko right wing Trump talk[5] and give it to the lawyers.  You're simply a vindictive loser on a general rant, and you bumped into a tiger by mistake in the bushes."  [*Id*., page 15]  And on and on.  So, Jansen carried out his threat and sued Liddell in the U.S.  Interestingly, Jansen's original lawyers

---

[4] No such luck.
[5] He doesn't seem to have noticed the reference to former President Trump was critical of Trump, and of him.  It's as hard to find any "right wing" or "wacko" content in Liddell's posts as it is to find the "anger" and "vindictiveness" Jansen keeps referring to.  There seems to be a great deal of projection going on.

got out of the case almost as soon as they filed it, right after voluntarily dismissing the other Defendant out.

<u>Law</u>

A plaintiff has the burden of proving personal jurisdiction over a defendant. Fed.R.Civ.P. 12(b)(2), *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773 (7th Cir. 2003). Where personal jurisdiction is challenged, the court need not accept all 'well-pled facts' as true. A district court sitting in diversity has personal jurisdiction over a non-resident defendant only if a court in the state where it sits would have jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004). The reach of state "longarm" statutes is, however, limited by the Due Process clause in the Fourteenth Amendment to the U.S. Constitution. *International Shoe Machinery Co. v. Washington*, 326 U.S. 310 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Here in Illinois, however, there is no practical difference, as the longarm act [735 ILCS 5/2-209], essentially limits itself to jurisdiction consistent with due process. *uBid v. GoDaddy Group, Inc*., 623 F.3d 421 (7th Cir. 2010).

There are two kinds of personal jurisdiction, general and specific. General jurisdiction arises from the defendant's long-term presence in the forum state. It allows the court broad ability to hear "any and all" claims against a defendant who is 'at home' in the forum, either through physical presence or "continuous and systematic" contacts, whether the case arises from those contacts or not. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). The threshold for general jurisdiction is high; The contacts must be sufficiently extensive and pervasive to be tantamount to physical presence. *Purdue Research Found*., 338 F.3d at 787. Isolated or sporadic contacts such as occasional visits are insufficient. *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 475 (1985). It is obvious that there is no basis for this Court to assert general jurisdiction over this Defendant. He has been in Illinois once, for a couple of hours, and has no other forum contacts.

So if there is jurisdiction, it must be specific. The Constitutional touchstone is that the defendant must have sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. 310, 316 (1945). To that end the defendant, and not the plaintiff or third parties, must affirmatively create the contact with the forum, and the contacts must be with the forum itself, not just with individuals who happened to reside there. *Walden v. Fiore*, 571 U.S. 277 (2014). Consent is the basic concern. The Constitution forbids subjecting anyone involuntarily to foreign jurisdiction. There must be "some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Ultimately, the question a Court must ask is "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden,* 571 U.S. at 290.

The Seventh Circuit has specifically cautioned against exercising jurisdiction over defendants whose actions merely cause "incidental and constitutionally irrelevant effects" on a plaintiff in the forum. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n. 1 (7th Cir. 2010). Where the claim arises from a contract, the analysis is relatively straightforward, because entering into contact is an intrinsically intentional act. Most tort claims, being by definition the result of incidental or accidental contact, are more problematic. Generally, even when the claim arises from intentional conduct.

it is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts" with the forum. *Walden*, 571 U.S. at 286.

Intentional torts arising from physical contact are generally no problem; You can't batter someone long distance. Defamation, however, is a tort theory which presents special jurisdictional problems. It happens just by saying (or writing) words, and the "harm" inherently occurs wherever the plaintiff is. Thus, if not properly managed, defamation threatens to become an exception that swallows the Constitutional rule. The Supreme Court first addressed this problem before the Internet, when Hollywood actress Shirley Jones sued *The National Enquirer*, its President, and its reporter in California for calling her a drunk. The *Enquirer* was a Florida corporation, its President was a Florida resident who had traveled to California only twice, on vacation, and the reporter was a Florida resident who traveled to California frequently on business. The court noted that the harm to Jones' reputation occurred in California, but also relied on the facts that the *Enquirer* was physically distributed in California, and that the reporter, supervised by the company President, did most of his "research" for the Jones story while physically present in California. The court did sum up its holding as: "jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California." *Calder v. Jones,* 465 U.S. 783, 791 (1983). But *Calder* does not actually stand for the proposition relied on by Jansen and Cityzenith, that in a defamation case there is automatically jurisdiction over the defendant wherever the plaintiff is.

The World Wide Web has only increased the danger of defamation plaintiffs being able to sue anyone, anywhere, in their own back yard, if the basic principles of jurisdiction are not followed. Even before the Supreme Court revisited the limits of jurisdiction in defamation cases, the Seventh Circuit had pointed out the danger of over-reading *Calder*. In *Mobile*

*Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010), the Court of Appeals upheld the dismissal of a trademark case against an out-of-state defendant where the plaintiff tried to base jurisdiction the argument that the harm occurred where plaintiff was, and defendant had a website accessible from the forum.  The principal of the defendant had been in Illinois once, on vacation.  Other than that, and the website, the Houston-based defendant had no Illinois contacts.  The Seventh Circuit first noted "the outcome in *Calder* was tied closely to its facts."  The court went on:  "In *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), we rejected the contention that *Calder* meant "any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." And then the court held that *Calder*'s 'directed activity' test is only one way of many to apply the traditional minimum contacts analysis, and does not create a looser jurisdictional standard for defamation cases.  *Mobile Anesthesiologists* then distinguishes or repudiates the Seventh Circuit's previous *dicta,* to the extent that they can be read to allow jurisdiction based only on the location of the "harm."  "A plaintiff cannot satisfy the *Calder* standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website."  778 F.3d at 446.  See also *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Not long later, the Supreme Court itself 'contextualized' (some would say walked back) its *Calder* decision, in *Walden:*  "The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff."  "The strength of that connection was largely a function of the nature of the libel tort. ***The reputational injury caused by the defendants' story would not have occurred but for the fact that the

defendants wrote an article <u>for publication in California</u> that was read by a large number of California citizens." [Emphasis added] The Supreme Court went on to criticize the District Court for focusing on the plaintiffs' connections to the forum and the defendant's supposed knowledge of those connections. "This approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." ***"The proper focus of the "minimum contacts" inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.' *Calder*, 465 U. S., at 788…. And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 287-299 (2014).

Recent decisions from this District apply these principles in similar contexts. In *Chopra v. Naik*, 2017 U.S. Dist. LEXIS 161801 (N.D. Ill. 2017), the out-of-state defendant made allegedly defamatory remarks which were printed (physically) in a publication in India. Parts of the article, in turn, were posted on LinkedIn and other Internet sites. The court began: "Plaintiffs contend that they have established a *prima facie* case that personal jurisdiction exists in Illinois. They contend that [defendant] intentionally directed defamatory statements against [plaintiff] whom Defendants knew was an Illinois resident pursuing his profession there." Plaintiffs relied on *Calder*, as well as *Tamburo* and *Intercon Sols., Inc. v. Basel Action Network*, 969 F.Supp.2d 1026, 1031 (N.D. Ill. 2013). The District Court noted that in *Tamburo*, the out-of-state defendant had specifically urged the public to boycott the plaintiff's business in Illinois, posting the street address, and in *Intercon*, the defendant posted a defamatory report about the plaintiff on its own website, and then sent copies to selected news media published in Illinois. Naik, by contrast, made his statements in India, in a (physical, in-person) press conference addressing many subjects besides the defendant. The plaintiffs' argument that because they were

in Illinois, any comments about them were directed at Illinois, conferring jurisdiction over the defendants, was rejected.

Similarly, in *Evanger's Cat & Dog Food Co. v. Thixton*, 2018 U.S. Dist. LEXIS 136069 (N.D. Ill. 2018), the court held that no personal jurisdiction would be conferred by Internet publication of a trade libel against an Illinois resident. The District Court relied on *Tamburo* for the analytical framework:

> For cases involving intentional tort claims such as this one, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Tamburo*, 601 F.3d at 702. The test for determining whether a defendant has purposefully availed herself of the protections of a forum state's laws has three elements. *Id*. at 703. First, the defendant must have engaged in "intentional conduct (or intentional and allegedly tortious conduct)." *Id*. (cleaned up). Second, the conduct must have been "expressly aimed at the forum state." *Id*. And finally, the defendant must know that the effects of the allegedly intentional and tortious conduct "would be felt—that is, the plaintiff would be injured—in the forum state." *Id*.
>
> \* \* \*
>
> In most defamation cases, it is not particularly difficult for a plaintiff to prove the first element of the purposeful-availment test. It is par for the course that a speaker accused of defamation spoke intentionally. The second and third elements are not as easy to apply, especially when the statements at issue are published online.

The court specifically held that the mere fact the defamatory online article might have been read in Illinois was insufficient to create "minimum contacts." The court ordered discovery on defendants' knowledge of plaintiff's location and the actual impact in Illinois before making a final decision.

In *Telemedicine Solutions LLC v. WoundRight Techs., LLC*, 27 F.Supp.3d 883 (N.D. Ill. 2013), the Illinois-based plaintiff registered trademarks and set up a website using the marks, and (so it alleged) built a nationwide reputation. The defendant, based in Wyoming, entered the same business as the plaintiff, using a similar name, and had a substantial Internet presence including its own website and various social media platforms. The defendant bought a Google

- 12 -

popup ad that would appear in Illinois (and elsewhere) in response to specific searches, explicitly disparaging the plaintiff's products. The plaintiff alleged defamation as well as unfair competition by creation of product and service confusion, arguing that its goodwill and reputation were based in Illinois and that defendants' Google ads were seen in Illinois by Illinois residents. The Defendant had no physical presence in Illinois. (But the nature of the business did not require it). The plaintiff's theory was that *via* its Google ad, the defendant was "deceptively creating the false and/or mistaken consumer belief that that Defendant's products and services emanate[d] from Telemedicine in Illinois * * *, by attempting to misappropriate consumers in Illinois * * * searching the internet for Telemedicine in Illinois." 27 F.Supp.3d at 889. The court dismissed for lack of personal jurisdiction, and refused jurisdictional discovery. "The 'express aiming' test cannot be satisfied merely by allegations of intentional tortious conduct. 'Something more' is needed." *Telemedicine Solutions*, citing *Tamburo*, 601 F.3d at 706. The court called the Seventh Circuit's interpretation of *Calder* the "injury plus" test— Injury in the forum plus some actual conduct that reaches into the forum. "[P]laintiffs seeking to establish personal jurisdiction on the basis of Internet contacts "must still prove that the defendant had constitutionally sufficient contacts with the forum and that the defendant's contacts were temporally and substantively related to the lawsuit." 27 F.Supp.3d at 896.

Turning to this case, it should probably first be noted that notion of damage to the Plaintiffs' business occurring in Illinois is dubious. The public record appears to show that Cityzenith is a shell company with no real Illinois presence. It was formed in Delaware fourteen years ago, but nobody troubled to register it to do business in Illinois until 2017, and its current registered status with the Illinois Secretary of State is defunct. Its Chicago "headquarters" is a mailbox, in the store that used to be "Mailboxes, Etc." Jansen apparently does live in Illinois,

but what he does here is not clear. The YouTube video clip linked in the complaint (originally on CNN) of Jansen talking about a previous company he formed makes it clear that except for Jansen, the entire operation was in India. [See Docket # 8, par. 22(c); https://www.youtube.com/watch?v=Y_g4rTF5aig.] One has to wonder, to the extent that Cityzenith has any employees, equipment, offices, or customers, whether those are in India too. They certainly are not in that mailbox on Clark Street.

Leaving aside the question of whether Plaintiffs have a real business presence in Illinois, there is still an insufficient basis for this Court to assert personal jurisdiction over Liddell. He lives on other other side of the Atlantic, and was not even present in the United States when the events giving rise to this lawsuit occurred. He did not initiate the contact—Jansen did. Far from purposefully directing acts to the forum, he did not even know where Jansen was. [Exhibit F, par. 26] In response to messages directed at him by Jansen, he posted some comments (some consisting of quotes from Jansen's abuse) on an Internet forum which he does not own or control (he didn't post anything on his own site), with no substantial contacts with Illinois. There is not even a reference to Illinois in the allegedly defamatory comments. [See Amended Complaint] There is nothing more to the jurisdictional argument. The complaint makes no bones about it; Plaintiffs claim that because they are here, there is jurisdiction. That is simply not the law. Here there may be 'injury' in Illinois, but there is no 'plus.' This case thus fails the "injury plus" standard.

Further, if "fair play" is truly the issue, Jansen's blatantly malicious, threatening and abusive communications should be taken into account, along with his self-confessed improper motives. After seeking out contact with Liddell, Jansen was obviously trying to provoke him, obsessively taunting, insulting, refusing to leave him alone. Jansen's LinkedIn messages admit

he was trying to provoke: "I pushed your buttons." [Exhibit 2 to Exhibit F, page 15] Then, Jansen blatantly threatens to sue Liddell in an inconvenient forum (and even then, he just says "here," not "Illinois"), and to make him spend thousands of dollars on legal fees to defend himself. Jansen is openly admitting that it is his goal to do exactly what the Seventh Circuit has held is impermissible, unilaterally create jurisdiction and then use the inconvenient forum as leverage. This is not something that should be permitted. It is inconsistent with fundamental Constitutional principles, as well as basic fairness and common sense.

<em>Conclusion</em>

This case is a 'poster child' for the abuse of diversity jurisdiction. A Defendant who lives and works on the other side of the world and does nothing in Illinois has been sued here solely on the basis of the Plaintiff's location in Illinois. The case should be dismissed without further process, pursuant to Federal Rule of Civil Procedure 12(b)(2).

SHANE LIDDELL

By:      /s/ Marcos Reilly

Dated: February 3, 2023

Marcos Reilly
HINSHAW & CULBERTSON LLP
151 N. Franklin St. Suite 2500
Chicago, IL 60606
(312) 704-3779
mreilly@hinshawlaw.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and MICHAEL JANSEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22-cv-05101 Hon. Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) ) | |
| Defendants. | ) | |

**EXHIBIT A**

**cyberdriveillinois.com is now ilsos.gov**



Office of the Secretary of State Jesse White

ilsos.gov

# Corporation/LLC Search/Certificate of Good Standing

Corporation File Detail Report

| | |
|---|---|
| File Number | 71215032 |
| Entity Name | CITYZENITH HOLDINGS, INC. |
| Status REVOKED | |
| | Revoked on Friday, 14 October 2022 |
| | |

## Entity Information

Entity Type
CORPORATION

Type of Corp
FOREIGN BCA

Qualification Date (Foreign)
Thursday, 25 May 2017

State
DELAWARE

Duration Date
PERPETUAL

## Agent Information

Name

DANIEL G. COMAN

Address
2300 CABOT DR STE 455
LISLE , IL 60532

Change Date
Friday, 10 January 2020

## Annual Report

Filing Date
00/00/0000

For Year
2022

## Officers

President
Name & Address
MICHAEL JANSEN 2506 N CLARK ST #235 CHICAGO IL 60614

Return to Search

Reinstate your Revoked Corporation

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and<br>MICHAEL JANSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 22-cv-05101 |
| | ) | Hon. Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT B**

Delaware.gov

State Agencies

**Department of State: Division of Corporations**

Allowable Characters

HOME

| Entity Details |
|---|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **4676211** | Incorporation Date / Formation Date: | **4/23/2009** (mm/dd/yyyy) |
| Entity Name: | **CITYZENITH HOLDINGS, INC.** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **VCORP SERVICES, LLC** | | |
| Address: | **108 W. 13TH STREET SUITE 100** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

Submit

View Search Results          New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITYZENITH HOLDINGS, INC., and )
MICHAEL JANSEN, )
)
     Plaintiffs, )
)
          v. )    22-cv-05101
)     Hon. Sara E. Ellis, District Judge
SHANE LIDDELL, and CALEB NAYSMITH, )
)
     Defendants. )

**EXHIBIT C**



## Helping You Be Unstoppable This Holiday

With Our Pack & Ship Guarantee

 GET DIRECTIONS ›

## The UPS Store Lincoln Park

**Open Now**    Closes at 7:00 PM

| Call Us | Directions |
|---------|------------|

Get directions, store hours & UPS pickup times. If you need printing, shipping, shredding, or mailbox services, visit us at 2506 N Clark St. Locally owned and operated.

📍 **2506 N Clark St**
**Chicago, IL 60614**

Clark And Wrightwood

📞 **(773) 935-7755**

📠 (773) 935-0075

✉️ **store1053@theupsstore.com**

📦 **Estimate Shipping Cost**

📄 **Contact Us**

## Hours of Operation

**Store Hours**

Open Now - Closes at 7:00 PM ⌄

**UPS Air Pickup Times**

Last Pickup Today at 6:00 PM ⌄

**UPS Ground Pickup Times**

Last Pickup Today at 6:00 PM ⌄

Start Print Order



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and MICHAEL JANSEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22-cv-05101 |
| | ) | Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) ) | Heather McShain, Magistrate Judge |
| Defendants. | ) | |

**EXHIBIT D**

| Name | License Status | Credential | City/State | Original Issue Date | Current Expiration Date | Ever Disciplined | DBA / AKA |
|------|----------------|------------|------------|---------------------|-------------------------|------------------|-----------|
| No records found for the criteria entered. | | | | | | | |

Search for a License

Search Criteria

**\*\* License Type:**

ACUPUNCTURE
ADULT USE CANNABIS BD
ADV PRACTICE NURSE
APPRAISAL
ARCHITECT
ATHLETE AGENT

**License Status:**

**License Number:**

**Legal Business Name:**

**Doing Business As:**

**First Name:**

Michael

**Last Name:**

Jansen

**City:**

**State:**

**County:**

Select a State

**Zip:**

**\*\* CAPTCHA:**

(../Controls/FormShield.aspx?
__formShieldID=FormShield1&generate=sound&properties=77E59E534FD71DABCADCF9569F93C46403CCD6703385AE77D12B9631E6B1C92C5DCC13C8EFC3A2A57DAB9F1330CA12

6J434r

## Current Filters

Search    Clear Form

**Last Name:** Jansen
**First Name:** Michael
**License Type:** ARCHITECT

| | Name | License Status | Credential | City/State | Original Issue Date | Current Expiration Date | Ever Disciplined | DBA / AKA |
|---|---|---|---|---|---|---|---|---|
| M | No records found for the criteria entered. | | | | | | | |

License Lookup

Return to IDFPR (/)
Lookup a License (/Lookup/LicenseLookup.aspx)
Lookup Help (/)
Primary Source Statement (/)

## About Us

*The Illinois Department of Financial and Professional Regulation's mission is:*

- **To protect the residents of Illinois,**

- **To ensure the safety and soundness of financial institutions,**

- **To ensure that competent professionals are licensed to provide services to the public, and,**

- **To enhance commerce in the state for the benefit of all its residents.**

*To learn more about the agency mission and strategic vision please click* ***here (https://IDFPR.illinois.gov/About/About.asp)***.

## Contact Us

**Find us at:**
*Illinois Department of Financial & Professional Regulation*
*555 West Monroe Street, 5th Floor*
*Chicago, IL 60661*
*AND*
*320 W. Washington, 3rd Floor*
*Springfield, IL 62786*

**Send mail to:**
*Illinois Department of Financial & Professional Regulation*
*320 W. Washington, 3rd Floor*
*Springfield, IL 62786*

✉
☎ *1-800-560-6420*
*TTY: 1-866-325-4949*
🖶 *Fax: 1-217-524-0142*

Copyright © 1997-2023 Iron Data Solutions All Rights Reserved

Financial & Professional Regulation (https://idfpr.illinois.gov/)

State of Illinois (http://www.illinois.gov/) | Illinois Privacy Information (https://www.illinois.gov/Pages/Privacy.aspx) | Accessibility (http://www.dhs.state.il.us/page.aspx?item=32765) | Contact IDFPR (https://idfpr.illinois.gov/contact.asp )

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and MICHAEL JANSEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22-cv-05101 Hon. Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) ) ) | |
| Defendants. | ) | |

**EXHIBIT E**



# Fulbright Scholar Directory

**Scholar Name or Project Keyword**

michael jansen

Ex. "John Smith" or Ex. "Minimal Housing"

Search          Reset

## **Advanced**                                               ⌄

*NOTE: The Fulbright Scholar Directory is currently experiencing performance issues, so this page can be slow or not fully load at times. Work is underway to address this. We apologize for this inconvenience.*

No results found.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and MICHAEL JANSEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22-cv-05101 |
| | ) | Hon. Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) ) | |
| Defendants. | ) | |

**EXHIBIT F**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITYZENITH HOLDINGS, INC., and )
MICHAEL JANSEN, )
                                          )
    Plaintiffs, )
                                          )
               v. )       22-cv-05101
                                          )       Hon. Sara E. Ellis, District Judge
SHANE LIDDELL, and CALEB NAYSMITH, )
                                          )
    Defendants. )

**DECLARATION IN SUPPORT OF MOTION TO DISMISS**
_____

Shane Liddell, being duly sworn, states as follows.

1.      I am the Defendant in this lawsuit. I have personal knowledge of all the contents of this Declaration and could competently testify to them if called upon to do so.

2.      I am 59 years old, and not under any legal disability.

3.      I currently reside in Darlington, County Durham, England, United Kingdom. I maintain an office in London.

4.      I am a citizen of the United Kingdom, born in the United Kingdom. I lived for some 20 years in the Republic of South Africa, and also have South African citizenship. Contrary to the allegation in the Amended Complaint, I am not Australian. Contrary to the allegation in the Amended Complaint, I do not currently reside in Florida, nor did I reside in Florida when this lawsuit was filed, or when the events described in the initial Complaint and the Amended Complaint occurred.

5.      I have never been a citizen or a permanent legal resident of the United States.

6.      Although we were married in the United Kingdom, my wife is American.

7.      I lived in the United States from January 2012 to September 15, 2021, under a K-3 Non-Immigrant Visa for a Spouse of a U.S. Citizen.  My wife and I would have returned to the UK sooner, but the COVID19 pandemic and related travel restrictions interfered with our plans.

8.      I never had a U.S. "green card" and never applied for U.S. citizenship or permanent resident status.

9.      The entire time I lived in the U.S., I resided with my wife in South Florida on the Gulf Coast (Sarasota County).  I never lived in any U.S. State other than Florida.

10.     During my residency in Florida, I established a business, Smart Crowdfunding, LLC, a limited liability company formed in the State of Florida, having a registered office in Florida, and until we left the U.S., operated by my wife and by me from our (rented) Florida home.

11.     During my residency in Florida, I traveled from time to time to other U.S. states, for business and personal reasons.  On occasion I visited Texas, Oklahoma, Tennessee, and Mississippi.

12.     However, other than once changing planes at O'Hare International Airport in Chicago, on the way from Florida to the U.K., I have never set foot in the State of Illinois.  I was at O'Hare for an hour or two, and never left the airport.

13.     I have never owned any property in the State of Illinois, and have never done business in the State of Illinois.  My company, Smart Crowdfunding, LLC, has never had offices or employees in Illinois (or anywhere outside Florida, for that matter), and to my knowledge has never done business with any Illinois resident.

14.     Since we left the U.S. in September 2021, my wife and I have not maintained a residence anywhere in the U.S.  I have not been in the U.S. since September, 2021.

15. I have established another business in the U.K., but Smart Crowdfunding LLC remains an active business, which we manage from the U.K. via the website, www.smartcrowdfunding.us. In addition to the website, Smart Crowdfunding LLC maintains a Florida telephone number but has no physical presence in the U.S.

16. Smart Crowdfunding LLC is in the business of providing various forms of consulting and support for raising funds via crowdfunding. In some circumstances we assist the raising of capital through crowdfunding of private offerings governed by Regulations D, CF and A promulgated by the (U.S.) Securities and Exchange Commission.

17. Until August 2022, I had never heard of Michael Jansen or Cityzenith, and I certainly did not seek them out or initiate contact with them.

18. On or about August 24, 2022, I received an email message via the Smart Crowdfunding, LLC website portal from Jansen, providing his email address and cellphone number, with the message "We are looking for partners for potential Regulation D capital raise. Excessively raise more than $7 million via crowdfunding already." Responding, I sent him a link to book a suitable time via Calendly (www.calendly.com). Jansen went ahead and scheduled this into my calendar for a telephone conference to take place from 9:00 to 9:45 August 26, 2022. Copies of the original message and the conference call booking are attached as Exhibit 1.

19. However, Jansen did not make the virtual meeting. The arrangement was that as I was in the UK, I would call him at the scheduled time. I called him twice, but the calls went directly to his voicemail. He then (via email) claimed that I had not called, so I sent screenshots from my phone to show I had dialed his number twice. He persisted in claiming that I had failed to make a meeting with him. The truth is the reverse. He sent me several arrogant, condescending emails which seemed intended to bully me into doing business with him.

20.     I responded to Jansen's emails stating "Respectfully, I'll pass. Wishing you the best" and also via a (private) direct message on the LinkedIn.com platform, writing "Not sure what's with the condescending emails. As I said, I'll pass." My message elicited a torrent of abuse, threats, and insults from Jansen. A copy of the exchanges is attached as Exhibit 2. Eventually, Jansen began threatening to ruin me financially with a lawsuit that will force me to hire US counsel.

21.     I certainly did not 'doctor and alter' texts and email with Jansen to 'falsely portray him as unhinged,' as alleged in the Amended Complaint. Nor did I 'put up' any such communications on "the Internet." I posted accurate copies of some of his messages to me on LinkedIn, at https://lnkd.in/ebTqEzrk.

22.     I was alarmed by Jansen's unhinged and irrational messages, and concerned for people who might invest with him, especially since he seemed to be trying to use my services to seek investors, and for all I knew he might use my name without my permission. I therefore looked into Jansen's background and history a little, via the Internet, and I posted several messages on LinkedIn about him. It is a fact that his Reg A+ application was effectively fraudulent for failure to attach current financial statement, which is always a red flag. It is a fact that he did not submit current financial statement as this would possibly make his company less attractive to investors. Jansen was using an SEC approval and dated financials (2019 &2020) to raise funds in 2022, which is a violation of SEC regulations. To the best of my knowledge, everything else I said about Jansen and Cityzenith is also true, and all of the information in my posts was derived from public sources.

23.     In all of my dealings with Jansen, I was physically located in the United Kingdom. I was never in the United States, let alone in Illinois.

24.    I did not seek contact with Jansen;  He sought contact with me.

25.    Contrary to the allegations in the Complaints, I did not conduct an "Internet campaign," and I did not cooperate with any "unnamed co-conspirators."  I merely posted some messages on my personal LinkedIn page.  Caleb Naysmith, who was originally a Defendant in this case but was immediately let out, is a person I don't know, apparently a law student living in Kentucky, who responded to one of my public posts.  A couple of other people responded to my posts.  They are also people I don't know, and as far as I know, they are also not in Illinois.

26.    I was not really aware of Jansen or Cityzenith's physical location in August 2022, nor did I think I was taking any action which would have effects in Illinois.  I saw that in his promotional statements he was touting his supposed relationships with Sequoia Capital and Silicon Valley Bank, which are based in California.  To the extent that I thought about Jansen's geographic location, I had the impression he was operating on the West Coast.

27.    Even after receiving a copy of the Summons and Complaint by mail, along with the "Waiver of Service of Summons" form, there was some confusion about where I was being sued, as the "Waiver" states that the case is in the U.S. District Court for the Northern District of Indiana (another U.S. State I have never visited).

28.    I received the Summons, Complaint, and Waiver by mail in the United Kingdom, so presumably Jansen knows perfectly well that I am here, in the United Kingdom, and not anywhere in the United States.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed February 2, 2023.

Shane Liddell

5

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and MICHAEL JANSEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22-cv-05101 Hon. Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) ) | |
| Defendants. | ) | |

**EXHIBIT 1 to**

**EXHIBIT F**

act Home

dfunding <info@smartcrowdfunding.us>
tcrowdfunding.us



replied to or forwarded.
ith how this message is displayed, click here to view it in a web browser.

**Name**

Michael Jansen

**Email**

m.jansen@cityzenith.com

**Mobile**

3122822900

**Comment or Message**

We are looking for partners for potential regulation D capital raise. Excessively raise more than $7 million via crowdfunding already.

Sent from Smart Crowdfunding

 09:00am - 09:45am

**Michael Jansen**
Event type **Shane Liddell- Smart Crowdfunding**

▼ Details

⊘ Mark as no-show

⬀ Edit Event Type

⼮ Filter by Event Type

↻ Schedule Invitee
Again

**EMAIL**
m.jansen@cityzenith.com

**LOCATION**
No location given

**INVITEE TIME ZONE**
Central Time - US & Canada

**QUESTIONS**
What is the purpose of this meeting?
Reg D discussion. We have an A+ underway already raised $7 million.

Add meeting notes
(only the host will see these)

created August 24, 2022

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITYZENITH HOLDINGS, INC., and | ) | |
| MICHAEL JANSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 22-cv-05101 |
| | ) | Hon. Sara E. Ellis, District Judge |
| SHANE LIDDELL, and CALEB NAYSMITH, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT 2 to**

**EXHIBIT F**

**Full Linkedin Messaging exchange**



**Michael Jansen** · 2nd

Revolutionizing Building and Infrastructure with Digital Twin
Technology | Founder and CEO at Cityzenith | Lifelong entrepreneur...

FRIDAY



**Shane Liddell** (He/Him) • 2:52 PM

Not sure what's with the condescending emails. As I
said, I'll pass.

Best of luck. 

---

MONDAY

---



**Michael Jansen** · 12:43 PM

You're a fraud, no one's ever heard of you. Don't you ever talk to me like you're a real businessman you little prick. You're a fake behind a suit. I'm the real deal, so you're terrified. You're probably pick up a bunch of shit we start ups in charge of a bunch of fees. You should be afraid of me you bitch, I would slap your ass to the ground.

Fuck off and remember you're a small person who hustles investors. That's all you are.

Don't think for one minute that we are entertained for your childish drivel. My guess is that you are a complete failure and I'm struggling with your business. I know me your age very well.



**Michael Jansen** · 12:45 PM

I know men your age very well. When they get that angry at a certain point, their lives are over. Just like yours. Hence all the anger and the ego to replace a successful career that never was. If you were nicer to people like me, you were probably be rich. It's not my wont to lecture people, but you deserve it for the way you behave. But you are a useless piece of shit. Now I remember. Everybody said you were a dick back then.



**Shane Liddell** (He/Him) • 1:22 PM

Wow, you really are crazy. Threats of violence huh?
Nobody knows me huh? Well soon see how wrong
you are there.



**Shane Liddell** (He/Him) • 1:34 PM



 

Note: This is the moment the Linkedin post was created to show the true character of Michael Jansen and his threats. These threats initially began via email prior to this Linkedin exchange



**Michael Jansen** • 5:34 PM

We reported you for lying about Cityzenith. The post will be taken down. Additionally, we will issue a cease-and-desist and sue you, and that will be made public. You are obviously a complete fuck up. 100% you are broke. As I said, I know you're type very well. Old and still in the game, angry at the world.



**Shane Liddell** (He/Him) • 5:40 PM

Sure. Keep dreaming. I'll be the one suing you. You are dishonest as I've proven. And no, Linkedin will not be taking it down.

However, they are aware of your threatening messages and have agreed....



 **Michael Jansen** · 11:09 PM

You are fucked. You were dumb enough to put this in the public room. You little prick, we're gonna play with your rectum you dumb ass. Go buy some jelly. I can't believe you were dumb enough to go public, you are desperate limp wristed loser. I will satisfy beating you up one on one. You got scared, and made a mistake because you can't handle your own. So here's what's gonna happen, you're going to get sued and get dragged into court over here. I'll say it again, you were dumb enough to take this into the public realm, my attorneys were laughing. You're fucked because you made that mistake. I would've let you go by otherwise. That's how unsophisticated you are. Guys like you need to learn, and good ass kicking will help. You will be forced to take it down and also issue a public apology. I have been here before and I know what the rules are. You got wild and lost your cool. I pushed your buttons and you went berserk. You try to get ahead of this and see if your ass in the market, and made it worse for yourself by committing libel defamation. I know now that you have no sophistication. You were fine while I was bitch slapping you in private, but then you freaked. Fucking dumbass. We're going to sue you for everything you do in every single comment. Every comment is an additional claim. Go ahead, keep putting them up. As I said, you are totally fucked.



**Shane Liddell** (He/Him) • 11:26 PM

Go away dipshit. We'll see how this plays out. You have a history of bullying. only this time it will not work. There are many coming forward with evidence of your lies and scams since 2009. You've met more than your match finally.

Beating me up? 😂

You know nothing!



**Shane Liddell** (He/Him) • 11:31 PM

Oh, and take a look in the mirror. Problem, is that you privileged kind rarely do. Just continue scamming people to support your lifestyle as you always have done. It stops with me!

--- TUESDAY ---



**Michael Jansen** · 1:05 AM

Look, say what you want, but don't put any of that out there in the public. We have to do we have to do now. You'll be hearing from us. I really wish you hadn't done that. The rest of it was unpleasant, but didn't hurt anybody. This is different now. Good luck.



**Michael Jansen** · 1:07 AM

So you understand the sequence going forward, we will issue a cease-and-desist and a defamation notice. We will then file a case that you will have to hire an attorney to defend you. That will cost you $5000. The first thing that your attorney will tell you to do is to take down all of the muck that you put up and try to negotiate a settlement with us. We will demand $250,000 is punitive because you made your intention clear that you wanted to smear us. I still don't know why you did that. Stay tuned.

 **Shane Liddell** (He/Him) • 4:49 AM

Nah, it'll be the other way around. You're going to pay for your sick and twisted behavior.

Listen moron, you are not dealing with spotty teenager. I've been around the block more times than you, never silver spoon fed or privileged. Nor have I ever scammed investors as you have and continue to do. You're attempts at bullying are futile so suck it up and let it play out. You are the one who fucked up here, and played your twisted games with the wrong person and exposed yourself for who you really are.

No, I don't need $5k for an attorney. I know many over there who will take this on pro Bono.

Are you aware that it's a Federal crime to threaten people online with violence or harm? Obviously not. You will soon find out that it is. As I said, you fucked with the wrong person this time, and will pay the ultimate price.

Many are coming forwars pilling the beans of your corrupt behavior over the years. Yes, they know you and how you operate.

Now, be a big boy, pull up those pink panties, and leave me alone.

 **Michael Jansen** · 12:27 PM

I'm just getting started you little prick. First we're going to sue you. As I said, you were the dumb fuck that put this thing online. I can't believe you fucked your own ass like that. I am gonna fuck you for the rest of your career you little piece of shit. Buy some jelly.

I know you're fucking terrified, but you brought this on yourself. As I said, this will cost you tons of money. Stupid dumbass, why the fuck did you put this public? Now I have to beat you like a little bitch in front of your network for the rest of your career because you decided to open your little bitch mouth.

 **Michael Jansen** · 12:28 PM

And we have one of the best PR companies in the world. Ha... you dumbass motherfucker. So they will take the constant that lawsuit against you for $250,000 for being a dick, and put that in every newspaper in the fucking world you little prick.

Again, I wouldn't be doing any of those if you didn't go public with your bullshit. But now I'm gonna break your fucking spine.



**Michael Jansen** · 12:34 PM

You played your hand, now you're gonna have to spend the rest of your life wondering what we're doing. You defame does maliciously, publicly, and you're going to pay a shit ton you little bitch. Our lawyers are gonna fuck you for the rest of your life every single day long after you pay me.



**Michael Jansen** · 12:36 PM

Not only will you have to pay to respond, but you will have to pay to defend yourself, and then you'll have to pay the decision. The damage to your reputation you will not recover from. A global news release from a little prick Downunder against the top rated entrepreneur in United States for defamation, you're putting nails in your own coffin.

The lawyers will probably make a financial offer first, which is not transacted, they will just sue you and you will deal with the consequences. No lawyers take defamation case is pro bono.

The legal strategy that we adopt we designed to do one thing and one thing only, bankrupt you and ruin your reputation. We will keep the lawsuit in the public guy for years if necessary, with regular press releases, and continue to cost you money until you can't pay your bills and fold.

 **Michael Jansen** · 12:44 PM

Whatever personal demons you're fighting, if your wife isn't fucking you, or your kids hate you, or you don't have any money and your old and worn out and irrelevant, don't do this to yourself, you're making an ass of your entire career. You're fucked up, you went to far and did something illegal that's gonna get you in a lot of trouble and cost you your career. Our lawyers are going to do what they need to do to protect 7000 shareholders and $14 million in funding. You are going to end up in a different line of work. Now I will leave you alone. The lawyers will take over from here.

And you are no Robin Hood, you're just a confused loser, completely fucking deluded. If I am like you at your age, I will fucking shoot myself.

 **Shane Liddell** (He/Him) · 12:45 PM

 



**Michael Jansen** · 12:48 PM

Whatever personal demons you're fighting, if your wife isn't fucking you, or your kids hate you, or you don't have any money and your old and worn out and irrelevant, don't do this to yourself, you're making an ass of your entire career. You're fucked up, you went to far and did something illegal that's gonna get you in a lot of trouble and cost you your career. Our lawyers are going to do what they need to do to protect 7000 shareholders and $14 million in funding. You are going to end up in a different line of work. Now I will leave you alone. The lawyers will take over from here.

I must say this is my favorite insult.

Read this one again over and over again especially the beginning

I know people, you're terrified Shane.......

You're a wounded seal trying to pretend like it's a shark. Cute to watch.



**Shane Liddell** (He/Him) • 12:51 PM

Your 7,000 shareholders? Yes, I'll be protecting them from you.

Defamation? Unlike you who posted edited emails publicly in an attempt to make me look bad, I have posted factual information. You are sick bro. Get some help before it's too late.

Definition of defamation
law
: the act of communicating false statements about a person that injure the reputation of that person : the act of defaming another



**Shane Liddell** (He/Him) • 12:58 PM

I thought Linkedin were going to remove my post?




**Shane Liddell** (He/Him) • 1:42 PM

Reading through you constant babble,, it's clear to see who's the scared one here. You need to study psychology to know that you really are crazy. You just can't help yourself can you. Digging the hole deeper and deeper. Keep it up why don't you. I pity your wife and kids.



**Shane Liddell** (He/Him) • 2:52 PM

You see dumbnut, unlike you, I am honest. You are not and have never been. Everything about you is lies, including to shareholders too. Problem for you is that you've lied publicly here on Linkedin, clear as day to see, just as it's clear to see that you edited emails and posted them. Not very good edits either as clear to see that you used a different font. Dumb on all levels. You see, the SEC, Finra and law enforcement do not like to see members of the public lying, especially to shareholders.

You will get what's coming, the only thing is, I wish someone else had had the balls to do earlier it like I have done today.

Your days are numbered before your past catches up with you. Many will be cheering from the sidelines. Yes, all those people you have bullied over the years. You remind me of a certain Donald Trump who thinks he's above the law and can do and say watever he wants about people , whther lies or not.

Tick-tock Tick -Tock



**Michael Jansen** · 4:14 PM

Thank you. I will take all of your wacko right wing Trump talk and give it to the lawyers. You're a simply a vindictive loser on a general rant, and you bumped into a tiger by mistake in the bushes.

Just finished with the litigators. You'll hear from them and be given 30 minutes to remove the false statements and lies that you have put online about our organization, including but not limited to, how much money we have raised. You'll also be forced to make an a public apology for the personal attacks.

I don't know who the fuck you are, we have never had contact. You have no window into our business.

For now, the lawyers are going to do their thing.

Understand but absolute clarity, that as you continue to lie and speak about my company, would you know nothing about, I'll go after you in every way I possibly can, every day of every week, until you are punished which I will certainly see you to.

we haven't even begun to fight. You woke up the dragon, now you'll deal with the wrath.

I don't care about what some Bozo puts online, I care about taking care of you now. My people will handle the rest.

Are you happy with yourself?



**Michael Jansen** · 4:16 PM

Any move you make against the company of any kind anywhere in any country publicly to defame us and spread misinformation is ill-advised. The lawyers will be boarding you about further your legal actions.

You will notice that we have been smart not to defame you publicly, but only to defend ourselves. You're fucked.



**Shane Liddell** (He/Him) · 4:18 PM

You defamed me publicly you moron: ✓



✓

Smart? No, you are a fing idiot as you continuously show the world. ✓



**Shane Liddell** (He/Him) • 4:21 PM

Seriously, you need help. You've lost your mind long ago. All the stories of your past are flooding into my inbox daily.  You're a narcissit through and through as you clearly demonstrate. Problem is, just like Trump you can't see anything you do as wrong.

Yes, you defamed me publicly with lies and edited emails that you posted. That's all I need to know and all anyone else needs to know.



**Shane Liddell** (He/Him) • 4:23 PM

"You will notice that we have been smart not to defame you publicly, but only to defend ourselves. You're fucked."

   You f'ing idiot!!



**Shane Liddell** (He/Him) • 4:28 PM

Am I happy with myself? Yes, outing characters like you for who they really are gives me some satisfaction. I've always been an advocate for investor protection. The thousands of people that know me have known that that's how I roll and always have.