UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITYZENITH HOLDINGS, INC., and )
MICHAEL JANSEN, )
                              )
       Plaintiffs, )
                              )      No. 22 C 5101
   v. )
                              )      Judge Sara L. Ellis
SHANE LIDDELL, )
                              )
       Defendant. )

## OPINION AND ORDER

Plaintiffs Cityzenith Holdings, Inc. ("Cityzenith") and Michael Jansen, Cityzenith's CEO, filed this suit against Defendant Shane Liddell for defamation *per se* and false light invasion of privacy. Plaintiffs aver that Liddell undertook an "internet smear campaign designed to destroy the good names and reputations of Cityzenith and its CEO Jansen" by posting "doctored texts and messages" and "false and defamatory information" that cast doubt on Plaintiffs' legitimacy and capabilities. Doc. 8 ¶¶ 19–21. Plaintiffs ask the Court to grant them preliminary and permanent injunctive relief preventing Liddell from further defaming them, require Liddell to remove any defamatory posts about them from the internet, and award compensatory and punitive damages as well as court costs to them. Liddell argues that the Court lacks personal jurisdiction over him and moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the Court does not have personal jurisdiction over Liddell, the Court grants Liddell's motion to dismiss.[1]

---

[1] At the last status hearing on July 14, 2023, the Court allowed Plaintiffs' counsel to withdraw and instructed Michael Jansen that he must have counsel appear on behalf of Cityzenith by August 1, 2023. Doc. 50. The Court further warned Jansen that if he did not have counsel appear on behalf of Cityzenith, the Court would dismiss the case because Cityzenith, being a corporation, cannot proceed *pro se*. As of August 15, 2023, no one has filed an appearance on behalf of Cityzenith. Thus, the Court dismisses

BACKGROUND[2]

Cityzenith is a corporation incorporated in Delaware with its headquarters in Chicago, Illinois. Cityzenith holds itself out as a digital twin platform provider geared toward enabling zero-emissions buildings. Jansen, Cityzenith's founder and CEO, is an Illinois citizen who resides in Cook County, Illinois. Although Cityzenith rented and occupied physical office space in four different Chicago locations from 2014 until 2020, it stopped renting physical office space due to the COVID-19 pandemic and now lists its address as The UPS Store at 2506 Clark Street in Chicago, Illinois, where the company receives its mail. Cityzenith presents itself on social media pages and the internet as an Illinois-based company. The majority of its employees are Illinois-based, as are its service providers.

Liddell, who holds dual citizenship in the United Kingdom and South Africa, works as a crowdfunding consultant. He operates a business called Smart Crowdfunding LLC, which he formed while residing in Florida on a K-3 visa as the spouse of a U.S. citizen. Smart Crowdfunding, a Florida LLC, operated out of Liddell's Florida home and employed only Liddell and his wife. It had a Florida phone number and a website. After Liddell returned to the U.K. on September 15, 2021, he started a new company there, although he also continues to use the Smart Crowdfunding website and Florida telephone number. Liddell represents that Smart Crowdfunding no longer has a physical presence in the U.S. And his only physical presence in Illinois involved changing planes at O'Hare on one occasion.

---

Cityzenith's claims on the additional ground of failure to follow this Court's orders. This basis for dismissal does not affect Jansen's claims as he may proceed without counsel.

[2] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the amended complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Plaintiffs' favor. *Id.* at 782–83.

According to Plaintiffs, Jansen had never communicated with Liddell until he received an email from Smart Crowdfunding's administrative assistant on August 24, 2022 at 8:44 a.m.,[3] introducing Smart Crowdfunding and indicating the business' "interest[ ] in offering [its] services to [Jansen's] company." Doc. 34 at 4. The email featured a clickable link to book a consulting call with Smart Crowdfunding's "lead consultant," Liddell. *Id.*

Liddell disputes Plaintiffs' account, contending that Jansen has doctored the above email to make it appear that Smart Crowdfunding made the initial contact. Instead, Liddell avers that Jansen made the first contact through Smart Crowdfunding's website, which includes a portal through which an individual can send a message to Liddell. According to Liddell, Jansen submitted a message through the portal, which generated an email to Smart Crowdfunding's general email address at 8:42 a.m., with the comment "We are looking for partners for potential regulation D capital raise. Excessively raise more than $7 million via crowdfunding already." Doc. 38 at 15. In response to this message, Smart Crowdfunding's administrative assistant sent an email to Jansen at 9:44 a.m., which thanked Jansen for his "contact and interest in [Smart Crowdfunding's] services" and indicated that Jansen could "book a suitable time for a call with [its] lead consultant," Liddell, by clicking on the included link. *Id.* at 16. Jansen represents that he never received this message.

Putting aside the parties' dispute over who made the first contact, Jansen proceeded to schedule a telephone conference with Liddell for August 26, 2022 at 9 a.m. Chicago time. Liddell agreed to call Jansen, but ultimately, they never connected. The parties did not form a business relationship and instead developed the acrimonious relationship that led to this lawsuit.

---

[3] None of the emails the parties have included in their submissions indicate the time zone, although Liddell specifies with respect to the emails he submits that they reflect U.K. time. Presumably, Jansen's submitted emails reflect Chicago time.

While the two parties initially exchanged messages in private, on September 4, 2022, Liddell began posting "false and defamatory information about Jansen and Cityzenith" on LinkedIn and Twitter that "damag[ed] . . . Plaintiffs' good names and reputations." Doc. 8 ¶ 21. Virtually anyone with an internet connection can access LinkedIn and Twitter. Two Illinois-based Cityzenith investors attest that they saw Liddell's posts about Plaintiffs because Liddell had tagged Cityzenith in them. The posts created concerns about their investments and Cityzenith as a whole. However, both individuals maintained their significant investments in Cityzenith even after seeing the posts.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret.*

*Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

## ANALYSIS

Liddell argues that the Court lacks personal jurisdiction over him because he does not have sufficient contacts with Illinois. In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Although there may be theoretical differences between the federal and Illinois constitutional standards, the Seventh Circuit has observed that "no Illinois case has provided a definitive explanation" of these differences. *Matlin*, 921 F.3d at 705 (7th Cir. 2019). Moreover, both constitutional standards essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters.*, 725 F.3d at 732. Thus, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393 (7th Cir. 2020); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010); *see also Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).

Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)).

5

Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Personal jurisdiction comes in two forms: general and specific.[4] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Plaintiffs do not argue that that the Court has general jurisdiction over Liddell, and so the Court limits its analysis to specific jurisdiction.

To justify specific jurisdiction, the "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specifically, the defendant's connection to the forum "must arise out of contacts that the 'defendant *himself*' create[d]," *id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), and cannot be based solely on the defendant's contacts with the plaintiff, *id.* at 285–86 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). These requirements apply to intentional tort claims like the one at issue here. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (discussing how the Supreme Court's decision in *Walden* interacts with its prior decision in *International Shoe*). Thus, to determine whether Liddell is subject to jurisdiction in Illinois, the Court considers whether (1) "the defendant has purposefully directed his activities at the forum state," (2) "the alleged injury arises out of the defendant's forum-related activities," and (3) "the exercise of specific personal jurisdiction . . . comport[s] with

---

[4] As the Supreme Court recently emphasized, these jurisdictional categories apply where a corporation or individual has not otherwise consented to suit in the forum state. *Mallory v. Norfolk S. Ry. Co.*, --- U.S. -----, --- S. Ct. ----, 2023 WL 4187749, at *8 (June 27, 2023). An additional avenue for jurisdiction exists where a defendant has consented to suit. *Id.* Here, because Plaintiffs do not argue that Liddell consented to suit in Illinois, the Court does not address this question further.

traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

## I.      Purposeful Direction of Activities at Forum State

The Court first turns to the question of whether the "conduct underlying the claims was purposefully directed at the forum state," which proves dispositive in this case. *Id.* The purposeful-direction requirement ensures that "random, fortuitous, or attenuated contacts" with the forum state do not provide the sole basis for jurisdiction over a nonresident. *Burger King Corp.*, 471 U.S. at 474–75 (citations omitted) (internal quotation marks omitted). The Seventh Circuit has distilled the purposeful-direction requirement from *Calder v. Jones*, 465 U.S. 783 (1984), into the following three elements: "(1) intentional conduct . . . ; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." [5] *Tamburo*, 601 F.3d at 703. Because Liddell does not dispute that he acted intentionally, the Court considers only the remaining two elements.

Plaintiffs argue that Liddell expressly aimed his conduct at Illinois with the knowledge that the effects would be felt in Illinois because he (1) posted defamatory messages knowing that Plaintiffs would be affected in Illinois, (2) sent an email to Illinois resident Jansen marketing his services, and (3) posted content that reached members of Cityzenith's Illinois-based investor

---

[5] A plaintiff may alternatively show personal jurisdiction over a defendant in a defamation case "if a defendant has sufficient contacts under the standard established in *Keeton* [*v. Hustler Magazine*, 465 U.S. 770 (1984)]." *Basile v. Prometheus Global Media, LLC*, 15-cv-10138, 2016 WL 2987004, at *3 (N.D. Ill. May 24, 2016) (citing *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 n.1 (7th Cir. 2010)). In *Keeton*, the Supreme Court found the defendant had minimum contacts with the forum because it made "regular monthly sales of thousands of magazines" in the forum state that could not "be characterized as random, isolated, or fortuitous." 465 U.S. at 775. Here, Plaintiffs do not suggest that Liddell has sufficient contacts under the standard set forth in *Keeton*, and so the Court proceeds under *Calder*'s express aiming test.

pool.[6]  Doc. 34 at 15.  Initially, *Walden* rejected the notion that merely engaging in conduct "with knowledge that it would affect persons with a 'significant connection' to" the forum indicates that the defendant "expressly aimed" his actions at the forum.  571 U.S. at 282 (quoting *Fiore v. Walden*, 688 F.3d 558, 581 (9th Cir. 2014)).  The *Walden* Court concluded that such an approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Id.* at 289; *see also id.* at 291 ("[T]he mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction").  This is particularly true in defamation cases, where to say that the plaintiff 'felt the effects' of the tort in the forum state is merely to say that she lives there."  *Bittman v. Fox*, No. 14 C 08191, 2015 WL 5612061, at *5 (N.D. Ill. Sept. 23, 2015).  Rather, the Court must focus on the "relationship among the defendant, the forum, and the litigation," *Walden*, 571 U.S. at 284 (quoting *Keeton*, 465 U.S. at 775), and specifically, "contacts that the 'defendant *himself*' creates with the forum," *Curry*, 949 F.3d at 396 (quoting *Burger King*, 471 U.S. at 475).

To meet the express aiming test, courts generally require "something more" than intentional tortious conduct that causes harm to a plaintiff located in the forum state. *Telemedicine Sols. LLC v. WoundRight Techs. LLC*, 27 F. Supp. 3d 883, 898 (N.D. Ill. 2014) (quoting *Tamburo*, 601 F.3d at 706).  And for suits involving internet-based injuries, like the one at issue here, courts are "careful in resolving questions about personal jurisdiction involving

---

[6] As Liddell points out, in arguing that the harm occurred in Illinois, Plaintiffs rely on cases discussing proper venue rather than personal jurisdiction.  *See* Doc. 34 at 14.  But "establishing venue in this District does not, by itself, establish personal jurisdiction," and so the Court must "evaluate personal jurisdiction and venue independently."  *Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1031 (N.D. Ill. 2015).  The Court thus considers only arguments relating to personal jurisdiction and disregards all arguments relating solely to venue.  *See id.* at 1032 ("[T]he law provides no basis for this Court to conflate an analysis of personal jurisdiction with an examination of venue."); *Bittner v. Wright Med. Grp.*, No. 4:17-cv-04241, 2018 WL 3231270, at *4 (C.D. Ill. Jan. 23, 2018) (distinguishing between motions to transfer venue and motions for personal jurisdiction, noting that "[c]onsiderably different, imposing hurdles are presented in the latter than in the former").

online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (quoting *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010)). To show "something more," then, "a defendant must in some way *target* the forum state's market." *Id.* at 559; *see also NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (court had jurisdiction where the defendant created an online website arranging for the sale and shipment of infringing product to Illinois). For example, in *Calder*, which involved a libel claim, the Supreme Court found that the petitioners targeted California so as to justify jurisdiction there because they drew sources for their article from Californians, knowingly published the article to their large readership in California, and wrote about California-based activities and subjects. 465 U.S. at 789–90. And in *Tamburo*, in which the plaintiff also asserted a defamation claim, the defendants used their websites to post the plaintiff's Illinois address and encouraged readers to boycott the plaintiff's business, 601 F.3d at 706, "expressly attempting to incite action by residents of the forum state, against the plaintiff in the forum state," *Bittman*, 2015 WL 5612061, at *5.

In contrast to these cases, Liddell's conduct here—making allegedly defamatory posts on a website accessible to Illinois residents—does not amount to the requisite "something more." *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (with internet-based torts, a "plaintiff cannot satisfy the *Calder* standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website"). Liddell did not engage with Illinois residents to inform his postings, mention Illinois in his posts, circulate his posts to a widely-read Illinois publication, place information on Illinois television

9

channels or physical spaces in Illinois, or do business with Illinois residents through his online presence. *See Rogers v. City of Hobart*, 996 F.3d 812, 815 (7th Cir. 2021) (consultation of investigative database and placing a warrant on a database available to authorities across the U.S. did not indicate that the defendant expressly aimed his actions at Illinois, even though authorities used that information to effectuate the arrest of the plaintiff in Illinois); *Bittman*, 2015 WL 5612061, at *5 (distinguishing *Calder* because the plaintiff did not allege facts suggesting that the defendant "had any reason to believe that his blog post would be ***read*** widely (or even at all) in Illinois" or that the "blog has an Illinois readership"); *Telemedicine Sols.*, 27 F. Supp. 3d at 900 (the requisite "something more" did not exist where "[n]one of Defendant's alleged contacts—its website, Facebook page, Twitter feed, and conference-based marketing efforts— was targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses"). And while Plaintiffs attempt to analogize their situation to that of the plaintiff in *Tamburo* by pointing to the fact that Liddell posted Cityzenith's billing address on LinkedIn, Liddell only did this after Plaintiffs filed their lawsuit, and so Plaintiffs cannot "attempt[ ] to salvage personal jurisdiction" by relying on this potential "contact that did not exist at the time they filed suit." *Matlin*, 921 F.3d at 707 ("We reject the argument that 'fair play' includes a scenario where plaintiffs sue defendants in an unfamiliar forum and the district court permits the plaintiffs' attorney to create jurisdiction, *ex post facto*, from a single online purchase."); *see also Seven Oaks Millwork Inc. v. Royal Foam US, LLC*, 19 C 6234, 2019 WL 6827641, at *4 (N.D. Ill. Dec. 13, 2019) ("[J]urisdiction cannot be based on a contact that did not exist when Plaintiff sued.").

10

As for the email Plaintiffs provided that they contend shows Liddell reaching out to solicit Plaintiffs' business,[7] the record does not suggest that Liddell knew of Plaintiffs' connections to Illinois at that time, nor does the email say anything related specifically to Illinois.[8] Thus, the email does not allow for the inference that Liddell expressly aimed his conduct at Illinois. *See Walden*, 571 U.S. at 285 (examples that may suffice to show express aiming include "entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State" or "circulating magazines to 'deliberately exploi[t]' a market in the forum State" (alteration in original) (citations omitted)). True, Plaintiffs felt the effects of Liddell's conduct in Illinois, but as already discussed, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Finally, although Plaintiffs have identified two Cityzenith Illinois-based investors who saw Liddell's posts, this again does not suggest a connection between Liddell and Illinois. Both investors admit that they saw the posts because Liddell tagged Cityzenith, a company they invested in, on LinkedIn, not because Liddell had a large readership in Illinois or otherwise specifically targeted his posts at Illinois. These facts speak only to Liddell's use of a website that could be accessed anywhere, including the forum state, something courts have repeatedly held

---

[7] The Court assumes without deciding that Smart Crowdsourcing's administrative assistant's alleged actions can be attributed to Liddell. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 591 (7th Cir. 2021) ("[A]ttributing an agent's actions to a principal which are intertwined with the very controversy at issue is consistent with the purposeful availment requirement underlying the Supreme Court's specific personal jurisdiction precedent.").

[8] Plaintiffs argue that Cityzenith's online presence showed it was an Illinois company, but Liddell indicates that he did not do any research on Plaintiffs prior to their first interaction, and the alleged email appears to be nothing more than a standard, promotional email.

does not justify specific jurisdiction, *Mobile Anesthesiologists*, 623 F.3d at 446, and to the connection between *Plaintiffs* and the investors, which also does not justify jurisdiction, *Walden*, 571 U.S. at 289. The investors saw the posts not because they circulated in a forum-based publication, like in *Calder*, but because of the investors' connection to Cityzenith. A Cityzenith investor who lived in any other state—or country, for that matter—would be equally as likely as Illinois investors to see posts on LinkedIn tagging Cityzenith, underscoring the "fortuitous" nature of the investor contacts with Illinois that Plaintiffs cannot use to support jurisdiction over Liddell. *See Curry*, 949 F.3d at 396 (quoting *Burger King*, 471 U.S. at 475); *be2 LLC*, 642 F.3d at 559 (defendant did not expressly aim conduct at Illinois even though twenty Illinois residents had created profiles on defendant's website because no evidence existed that defendant "targeted the Illinois market" or interacted with the Illinois-based website members). And while Liddell may have had a "tightknit tech community" online, as Plaintiffs argue, Doc. 34 at 10, Plaintiffs have not provided any suggestion that a substantial number of these community members lived in Illinois or that Liddell specifically interacted with any Illinois-based members of that community. *See b2LLC*, 642 F.3d at 559 (absence of evidence of interactions between the defendant and members of his online community with Illinois addresses suggested that the defendant did not target Illinois); *Bittman*, No. 14 C 08191 at *5 (no personal jurisdiction in internet defamation case where nothing suggested that the defendant had a large readership in the forum, "in marked contrast to *Calder*"); *cf. Calder*, 465 U.S. at 790 (relying in part upon large forum-based readership to find the defendants expressly aimed their libelous actions at the plaintiff). Therefore, the Court finds that Liddell did not purposefully direct his activities at Illinois, meaning the Court does not have personal jurisdiction over him.[9]

---

[9] Because Liddell does not have the required minimum contacts with Illinois, the Court need not address the remaining questions of relatedness or fair play and substantial justice.

**II.     Transfer under 28 U.S.C. § 1631**

The Seventh Circuit has recently explained that "when federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023); *see* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed[.]").  This obligation is "quite limited," however, and requires consideration of whether transfer of the case is "in the interest of justice."  *North*, 72 F.4th at 228.  A bar on refiling based on the statute of limitations amounts to a compelling reason to transfer a case.  *Id.* (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)).  But where the statute of limitations would not bar refiling, the Court need not transfer the case pursuant to § 1631.  *Id.* ("If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." (quoting *Danziger v. De Llano*, 948 F.3d 124, 133 (3d Cir. 2020))).  Here, in addition to the fact that the Court does not have sufficient evidence to determine a federal forum in which Liddell may be subject to personal jurisdiction with respect to this case, the statute of limitations does not stand as a bar to refiling.  Therefore, the Court does not find that the interests of justice require transfer under § 1631 and so dismisses the case without prejudice for lack of personal jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court grants Liddell's motion to dismiss [29]. The Court dismisses Plaintiffs' amended complaint without prejudice for lack of personal jurisdiction and Cityzenith's failure to follow the Court's order to have counsel enter an appearance on its behalf. Case terminated.

Dated: August 15, 2023

SARA L. ELLIS
United States District Judge